Edwin CORDERO, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

No. 06 Civ. 13289(VM).

United States District Court,
S.D. New York.

June 17, 2008.

Opinion Denying Reconsideration
July 7, 2008.

Steven Banks, The Legal Aid Society Bronx Neighborhood Office, Bronx, NY, for Plaintiff.

John E. Gura, Jr., U.S. Attorney's Office, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Edwin Cordero ("Cordero") brought this action for review of the final determination by the Commissioner of Social Security (the "Commissioner")[1] denying Cordero's claim for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) ("405(g)"), 1383(c)(3) (2006). Cordero now moves for judgment on the pleadings and the Commissioner cross-moves for judgment on the pleadings. For the reasons discussed below, the Court denies Cordero's motion and grants the Commissioner's cross-motion.

## I. BACKGROUND[2]

Cordero applied for SSI benefits on June 30, 2003,[3] claiming that he was unable to work due to psychological impairments. After Cordero's application was denied in an initial administrative review, Cordero requested a hearing, which was held on September 27, 2005 (the "Hearing"). By Order dated January 23, 2006 (the "Decision") the Administrative Law Judge ("ALJ") denied Cordero's application, finding that, although Cordero had been technically disabled within the meaning of the Act, he was not entitled to SSI

---

1. The original named defendant in this action was Jo Anne B. Barnhart, Michael J. Astrue's ("Astrue") predecessor as Commissioner of Social Security. Astrue was sworn in as Commissioner of Social Security on February 12, 2007. Accordingly, pursuant to Federal Rules of Civil Procedure 25(d), Astrue is substituted as the defendant in this action and the caption is amended accordingly.

2. The facts summarized below are derived from the administrative record (the "Record"), which was filed by the Commissioner

with the answer in this action on July 19, 2007. Except where necessary, no further citation to the Record will be made. Citations to the Record will be referred to as "R".

3. Since SSI benefits are not payable for any month before the month in which the application is filed, 20 C.F.R. § 416.335, and SSI claims remain in effect only through the date of the Decision, 20 C.F.R. § 416.330, Cordero's claim for SSI benefits runs from June 30, 2003 to January 23, 2006 (the "Application Period").

benefits because his drug abuse was a material contributing factor to his disability.

On September 14, 2006, the Decision became the final decision of the Commissioner when the Appeals Council denied Cordero's request for review. Cordero brought this action on November 17, 2006, seeking this Court's review of the Decision.

Pursuant to Federal Rules of Civil Procedure 12(c), Cordero moved for judgment on the pleadings on October 1, 2007 ("Cordero's Motion"), claiming that the ALJ had applied improper legal standards, and that the Decision was not supported by substantial evidence. The Commissioner cross-moved for judgment on the pleadings on December 14, 2007 (the "Cross Motion"), claiming that substantial evidence in the Record supports the Decision.

Cordero's reply to the Cross Motion was due on January 9, 2008. By Order dated March 25, 2008 (the "March 25 Order"), Cordero was directed to show cause by March 31, 2008 as to why no response to the Commissioner's Cross Motion had been filed. The Court also advised that, in the event no timely response was received, the Court may proceed to consider the Cross Motion as unopposed and rule upon it on the basis of the papers received. *See, e.g., Rubet v. Comm'r of Soc. Sec.*, 442 F.Supp.2d 188, 189 (S.D.N.Y.2006). Cordero did not respond. Accordingly, the Court has reviewed the pending motions based upon the papers on file and finds there is substantial evidence to support the determination that, during the Application Period, Cordero's drug use was a material contributing factor to his disability. *See* 42 U.S.C. § 1382c(a)(3)(J).

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

Section 405(g) provides that "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). A fact is supported by substantial evidence when the supporting evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

"Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can expect to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Furthermore, an individual may be found disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

To determine whether an individual is disabled under the Act, an ALJ must utilize the five-step sequential evaluation process (the "Five Steps") for the adjudication of disability claims contained in 20 C.F.R. § 416.920 (2008), and restated by the Second Circuit in *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000) and *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998).

First, the ALJ considers "whether the claimant is currently engaged in substantial gainful activity" ("Step One"). *Shaw,* 221 F.3d at 132. Second, if the claimant is not engaged in substantial gainful activity, the ALJ considers "whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities" ("Step Two"). *Id.* Third, if the ALJ finds that the claimant does have a "severe impairment," the ALJ must determine "whether, based solely on medical evidence, [the] claimant has an impairment listed in Appendix 1 of the regulations" ("Step Three"). *Id.* If the claimant does have a listed impairment, the ALJ must find him disabled. *See id.* Fourth, if the claimant's impairment is not listed, the ALJ must consider whether, despite the claimant's severe impairment, he or she has the "residual functional capacity" ("RFC")[4] to "perform his or her past work" ("Step Four"). *Id.* Finally, if the claimant's RFC does not enable him to perform his past work, the ALJ must consider "whether there is other work which the claimant could perform" ("Step Five"). *Id.* At Step Five, the Commissioner bears the burden of proof, while the claimant bears the burden at Steps One through Four. *See id.*

■■■ Where the claimant is found to be disabled and medical evidence indicates that the individual suffers from drug addiction or alcoholism ("DAA"), the ALJ must perform a second evaluation to determine whether DAA is a "contributing factor material to the determination of dis-

ability." 20 C.F.R. § 416.935(a). If DAA is found to be a contributing factor material to the determination of disability, the claim will be denied. *See* 42 U.S.C. § 1383c(a)(3)(J). To determine whether DAA is a material contributing factor, the ALJ must determine whether the individual would still be disabled if he or she stopped using drugs and alcohol. *See* 20 C.F.R. § 416.935(b)(1). The ALJ then determines which of the current physical and mental limitations would remain if the individual stopped using drugs or alcohol, and analyzes the Five Steps again to conclude whether these remaining limitations would be disabling under the Act. *See id.* § 416.935(b)(2). If the claimant's remaining limitations are not disabling without his drug or alcohol use, his claim for SSI benefits will be denied. *See id.* § 416.935(b)(2)(i); 42 U.S.C. § 1383c(a)(3)(J).

## B. *APPLICATION*

In applying the Five Steps, the ALJ determined at Step One that Cordero had not engaged in substantial gainful activity since applying for SSI benefits.[5] (R. at 11–12, 14.) At Step Two, the ALJ found that Cordero had "the following 'severe' impairments: crack cocaine abuse, heroin abuse, and a schizoaffective disorder." (R. at 14; *see also id.* at 12.) The ALJ determined at Step Three that Cordero's abuse of crack cocaine and heroin qualified as a "substance addiction disorder." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.09 (the "Listings"); (*see also* R. at 12, 14.) On

---

4.  RFC refers to the most a claimant can still perform in a work-related setting "on a full-time, sustained, and competitive basis despite the impact of his or her medically determinable impairments." (R. at 12–13); *see also* 20 C.F.R. § 416.945.

5.  The ALJ noted that Cordero spent approximately $600 a month on crack cocaine and was arrested for attempted sale of narcotics,

therefore, it was "at least conceivable that [Cordero] had been funding his drug habit with money earned in illegal activities that would be considered 'substantial gainful activity.'" (R. at 12.) However, the ALJ explained that since there was no evidence on the Record that Cordero had been working since June 30, 2003, he determined that Cordero had not engaged in substantial gainful activity during the Application Period.

that basis the ALJ concluded that Cordero had "technically been 'disabled' since June 30, 2003." (R. at 12.) Thus, the ALJ found that Cordero was disabled within the meaning of the Act at Step Three.

However, the ALJ also concluded that Cordero's drug use was a material contributing factor to Cordero's disability because Cordero would no longer be disabled under the Act were he to stop abusing crack cocaine and heroin. The ALJ found that, although Cordero's schizoaffective disorder would remain "severe" because Cordero "would probably continue [sic] need to take psychotropic medication for the rest of his life," it would not rise to the level of being disabling under the Act, absent Cordero's drug use. *Id.* The ALJ also determined that Cordero's schizoaffective disorder absent his drug use would not meet "any of the impairments defined and described in the Listings," and that it "would cause no more than 'moderate' limitations in his ability to maintain social functioning and in his ability to maintain concentration, persistence or pace, and no more than 'mild' limitations in his activities of daily living and would cause no episodes of decompensation." *Id.; see also* 20 C.F.R. § 416.920a(c)-(d); Listings § 12.00(C).

The ALJ determined at Step Four what Cordero's RFC would be if he stopped using drugs. The ALJ concluded that Cordero would be limited to jobs requiring simple instructions and limited contact with co-workers or the public, and, therefore, Cordero would be unable to return to his past work at McDonald's and as a security guard. (*See* R. at 13–14.)

At Step Five, the ALJ relied on the testimony of a vocational expert that, ab-

sent his drug use, Cordero would be capable of working as a housekeeper, cafeteria assistant or dishwasher. *See id.* Therefore, the ALJ concluded that absent his drug use, Cordero was not disabled within the meaning of the Act. Accordingly, the ALJ determined that Cordero's drug use was a material contributing factor to his disability, and his claim for SSI benefits was denied.

■ Reviewing the Record as a whole, including Cordero's statements and medical records,[6] the Court finds there is substantial evidence to support the Decision. Specifically, Cordero testified at the Hearing that when he takes his prescribed medication and does not use street drugs, he feels "relaxed and normal," and that he "feel[s] fine" when he takes his prescribed medication. (R. at 194–95, 181.) The Medical Records corroborate Cordero's testimony. According to the Medical Records, when Cordero was using street drugs, he heard voices and attempted suicide. (*See* R. at 193–94, 81–97, 116). However, since May 2004, Cordero has been clean and compliant with his prescribed medications, and his symptoms have diminished. In particular, reports from Cordero's treating psychiatrist at South Bronx indicate that beginning in May 2004, Cordero has been alert, stable, experiencing no symptoms of schizophrenia, calm, and in a pleasant mood. (*See* R. at 132–56.)

Therefore, the Court finds the Record as a whole, including testimony and Medical Records, is more than sufficient to support a conclusion that the Decision was based on substantial evidence. Accordingly, the

**6.** The Record includes Cordero's medical records during the following periods: May 7, 2003 to July 15, 2003 from Metropolitan Hospital Center, April 2004 to May 2004 from Phelps Memorial Hospital Center, May 2004 to December 2004 from Lincoln Hospital, and December 2004 to September 2005 from South Bronx Mental Health Council, Inc. ("South Bronx") (collectively, the "Medical Records"). (*See* R. at 2, 79–97, 99–101, 102–09, 110–15, 116–60.)

Commissioner's Cross Motion is GRANTED and Cordero's Motion is DENIED.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Docket No. 10) of plaintiff Edwin Cordero for judgment on the pleadings is DENIED; and it is further

**ORDERED** that the cross-motion (Docket No. 13) of defendant Commissioner of Social Security for judgment on the pleadings dismissing the complaint is GRANTED.

The Clerk of Court is directed to withdraw all pending motions and close this case.

**SO ORDERED.**

## DECISION AND ORDER

### I. *BACKGROUND*

█ By Decision and Order dated June 16, 2008 (the "Order")[1], the Court denied the motion (the "Motion") of plaintiff Edwin Cordero ("Cordero") pursuant to Federal Rule of Civil Procedure 12(c), granted the cross-motion (the "Cross Motion") of defendant Commissioner of Social Security ("Commissioner"), and directed that this case be closed. The Court determined that the findings of the Administrative Law Judge ("ALJ") were supported by substantial evidence. Cordero now moves for an order granting reconsideration pursuant to Federal Rules of Civil Procedure 59(e) ("Rule 59(e)") and 60(b)(1) ("Rule 60(b)(1)"), and Local Civil Rule 6.3

("Rule 6.3").[2] Because Cordero's submission in support of the instant motion raises legal theories and arguments not previously argued before this Court, his motion for reconsideration is denied.

### II. *STANDARD OF REVIEW*

█ Motions to alter or amend judgments under Rule 59(e) and for reconsideration under Rule 6.3 are evaluated under the same standard. *Cioce v. County of Westchester,* No. 03 Civ. 6795, 2006 WL 692022, at *1 (S.D.N.Y. Mar. 14, 2006) (*citing Word v. Croce,* No. 01 Civ. 9614, 2004 WL 434038, at *2 (S.D.N.Y. Mar.9, 2004); *Williams v. New York City Dep't of Corr.,* 219 F.R.D. 78, 83 (S.D.N.Y.2003); *Griffin Indus. v. Petrojam, Ltd.,* 72 F.Supp.2d 365, 368 (S.D.N.Y.1999)). Under Rule 6.3, which governs motions for reconsideration in this District, the moving party must demonstrate controlling law or factual matters put before the court on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995); *S.E.C. v. Ashbury Capital Partners, L.P.,* No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (*citing AT&T Corp. v. Cmty. Network Servs., Inc.,* No. 97 Civ. 316, 2000 WL 1174992, at *1 (S.D.N.Y. Aug.18, 2000); Rule 6.3). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or

---

**1.** The Order is reported as *Cordero v. Astrue,* 574 F.Supp.2d 373, No. 06 Civ. 13289, 2008 WL 2485428 (S.D.N.Y. June 17, 2008).

**2.** A motion for reconsideration "is to be treated as a Rule 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." *United States v. Clark,* 984 F.2d 31, 32 (2d Cir.1993). Saturdays, Sundays and legal holidays do not

count toward the ten-day limit, nor does the day the opinion was entered. *See* Fed. R.Civ.P. 6(a). The opinion was entered on June 17, 2008, a Tuesday, and the Rule 59(e) motion was filed on June 27, 2008, a Friday. Thus, Cordero's motion was filed within 10 days of the Order, and therefore, it will be treated as a motion for reconsideration under Rule 59(e).

prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478, at 790).

Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litg.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000) (citations and quotation marks omitted). A Rule 59(e) motion is not intended to be a vehicle for a party dissatisfied with a court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided. *See Griffin Indus., Inc.,* 72 F.Supp.2d at 368. Furthermore, "[n]either Rule 59(e) or Local Civil Rule 6.3 ... is an appropriate vehicle ... to advance new facts, issues or arguments not previously presented to the court." *Pasha v. William M. Mercer Consulting, Inc.,* No. 00 Civ. 8362, 2004 WL 1474694, at *1 (S.D.N.Y. June 30, 2004)(*citing Williams,* 219 F.R.D. at 83). A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues, and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment. *See Montanile v. Nat'l Broad. Co.,* 216 F.Supp.2d 341, 342 (S.D.N.Y.2002); *Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y.1999). Rule 6.3 is intended to " 'ensure the finality of deci-

sions and to prevent the practice of a losing party ... plugging the gaps of a lost motion with additional matters.'" *S.E.C.,* 2001 WL 604044, at *1 (*quoting Carolco Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988)). Against this standard, the Court considers Cordero's arguments for reconsideration.

### III. *DISCUSSION*

Cordero urges reconsideration on the ground that the Court overlooked a controlling decision.[3] However, in doing so, Cordero argues new theories not previously raised before this Court in his original motion.

Specifically, Cordero asserts that a conflict existed between the physical and mental limitations that the ALJ found to affect Cordero's residual functional capacity ("RFC") and the vocational expert's ("VE") finding that Cordero could be employed as a Housekeeper, cafeteria assistant or dishwasher. The ALJ determined that Cordero would be limited to jobs requiring a low stress work environment, simple instructions and tasks, and no more than occasional contact with co-workers or the public.

Cordero now claims that the VE proposed jobs that Cordero is not capable of performing because they require more than occasional contact with co-workers or the public. Cordero also argues that the ALJ should have resolved this alleged conflict between Cordero's RFC and the jobs proposed by the VE before relying on the VE's testimony. Cordero relies primarily on *Aubeuf v. Schweiker,* 649 F.2d 107 (2d Cir.1981), to argue that because this Court

---

**3.** Cordero also asserts that the Court should grant reconsideration because his failure to respond to the Cross–Motion was due to administrative errors in his attorney's law office. Cordero, however, states that he would have responded to the Cross–Motion with the same arguments raised in his Motion, arguments this Court has already considered in deciding the Motion and Cross–Motion. Accordingly, reconsideration is not warranted. *See Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990).

did not consider the conflict between the limitations in Cordero's RFC and the actual demands of the jobs proposed by the VE, reconsideration is warranted. However, these arguments were not raised in his original motion to this Court. In contrast, Cordero argued in the Motion that the hypothetical that the ALJ posed to the VE did not incorporate all the physical and mental limitations the ALJ determined applied to Cordero, and that the hypothetical was not based on all the medical evidence in the record. In its Order, the Court, after reviewing the record as a whole, including the ALJ's determination of Cordero's physical and mental limitations, the ALJ's hypothetical posed to the VE, the VE's testimony, and Cordero's testimony and medical records, found that the ALJ's decision to deny Cordero's claim for Supplemental Security Income benefits was based on substantial evidence.

■■■ Because Cordero is attempting to advance different theories not previously raised before this Court and has failed to identify any controlling law or factual matters put to the Court on the underlying motion that the Court demonstrably did not consider, Cordero's motion for reconsideration is DENIED.

### IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that motion dated June 27, 2008 of plaintiff Edwin Cordero for reconsideration of the Court's Decision and Order dated June 16, 2008, is DENIED.

**SO ORDERED.**